Norman Thomas TRAPP, Appellee,

v.

**4–10 INVESTMENT CORPORATION,**
Appellant.

Stanley A. WALKOSZ, Appellee,

v.

**4–10 INVESTMENT CORPORATION,**
Appellant.

Nos. 19712, 19713.

United States Court of Appeals,
Eighth Circuit.

April 9, 1970.

John D. Kelly, of Wattam, Vogel, Vogel & Peterson, Fargo, N. D., for appellants and filed brief and reply brief.

Frank J. Magill, of Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, N. D., for appellee; Duane H. Ilvedson, Fargo, N. D., was on the brief with Mr. Magill.

Before MATTHES, GIBSON and LAY, Circuit Judges.

LAY, Circuit Judge.

These are consolidated diversity actions brought against the 4-10 Investment Corporation, a citizen of North Dakota (called the 4-10 Bottle Shop) for personal injuries incurred by Norman Trapp and Stanley Walkosz, citizens of Minnesota, based upon the defendant's alleged violation of the North Dakota Dram Shop Act.[1] In a jury trial, before the Honorable Ronald Davies, plaintiffs recovered verdicts in the sum of $22,000 for Walkosz and $45,000 for Trapp. The district court entered judgments on the verdicts and overruled defendant's motion for new trial and its motion for judgment n. o. v.

---

1. The N.D.Cent.Code § 5-01-06 (Supp. 1969) provides:

"Recovery of damages resulting from intoxication.—Every wife, child, parent, guardian, employer, or other person who shall be injured in person, property or means of support by any intoxicated person, or in consequence of intoxication, shall have a right of action against any person who shall have caused such intoxication by disposing, selling, bartering, or giving away alcoholic beverages contrary to statute for all damages sustained."

Upon appeal defendant alleges (1) the erroneous application of the North Dakota "choice-of-law" rule to this conflict of laws problem, (2) insufficient evidence to make a prima facie case as to violation of the Dram Shop Act, (3) error in instructions as to the elements necessary to establish a claim under North Dakota law and (4) prejudicial error in the trial court's receiving evidence as to (a) unrelated sales of alcoholic beverages by defendant, (b) hearsay testimony relating to a physician's testimony concerning Walkosz' injury and (c) speculative testimony as to possible future surgery. Upon due consideration of both the facts and law involved, we find no prejudicial error and affirm both judgments.

The facts may be briefly stated.

The injuries sustained by the plaintiffs were the result of a collision on Saturday, March 9, 1968, of their car with one driven by Craig Voigt. Voigt, at the time of the accident, was returning from a beer party held by high school students at a cottage on Fish Lake, in Minnesota. The beer party had been planned by some 50 to 60 juniors and seniors at Moorhead High School, in Moorhead, Minnesota, each of whom had contributed $2 or $3 for the purchase of the beer. The actual purchase had been made on the morning of March 9, by 20½ year old John Flynn, at the request of student Tom Haug. Flynn made the purchase of the beer at the 4–10 Bottle Shop in Fargo, North Dakota. At that time, Flynn, Haug and Voigt were all Minnesota residents and minors.

Two sixteen gallon kegs of beer were purchased by Flynn from the 4–10 Bottle Shop. Haug, who had accompanied Flynn to Fargo, remained in the car while the actual purchase was made. Flynn made the purchase with some seventy to eighty dollars, in small bills, which he had carried in his hand. At the time he made the purchase he was attired in tapered jeans and a sweater, sporting a two day old mustache. He was not questioned as to his age. He declined offered help from the clerk and insisted upon loading the kegs into the trunk of his car alone.

Thereafter, the beer was transported to a cottage on Fish Lake, Minnesota, about 45 miles southeast of Moorhead, Minnesota. Among those attending was Craig Voigt, who had helped to plan and had contributed to the purchase of the beer for the party. After consuming the equivalent of 6 or 7 cans of beer from the kegs (and no other alcohol), Voigt left the party. There was testimony that at the time he left he was intoxicated. Upon re-entering the city limits of Moorhead, Minnesota, at speeds estimated to have been between 70 and 80 miles per hour, he lost control of his car and collided with the car occupied by Trapp and Walkosz. Both plaintiffs were seriously injured.

(1) The "choice of law" rule.

By submission of the case to the jury under the North Dakota Dram Shop Act, the district court did not follow older North Dakota decisions which set forth the common law principle that the law of the place of the wrong governs tort actions. See Avron v. Plummer, 132 N.W. 2d 198 (N.D.1964) (not a multi-state case); Mann v. Policyholders' Nat. Life Ins. Co., 78 N.D. 724, 51 N.W.2d 853 (1952) (a multi-state case). We are not asked to pass upon the district court's determination that North Dakota would now abandon its older rule of "lex loci delecti" and follow the more modern conflict of law principle of "significant contacts."[2] Cf. American Service Mut. Ins. Co. v. Bottum, 371 F.2d 6, 9 n. 2 (8 Cir. 1967). Defendant concedes in its brief that the modern rule would now probably be followed in North Dakota, but complains that the trial court erred in the application of that doctrine. Under these circumstances, we must look for direction principally from other jurisdictions, since the North Dakota Supreme Court has not passed upon this precise question.

2. Restatement (Second) of Conflicts § 145 (Proposed Official Draft (1969)).

Defendant in recognizing that the "significant contacts" rule is applicable, proceeds to list the contacts with Minnesota and North Dakota and concludes that the dominant contacts are with Minnesota and that Minnesota, therefore, has the overriding interest in this suit. In contrast, defendant argues that the contact with the State of North Dakota is fortuitous. In support defendant cites several cases where state courts have not applied their dram shop acts extra-territorially, including Graham v. General U. S. Grant Post No. 2665, V.F.W., 248 N.E.2d 657 (Ill.1969); Butler v. Wittland, 18 Ill.App.2d 578, 153 N.E.2d 106 (1958); Eldridge v. Don Beachcomber, Inc., 342 Ill.App.2d 151, 95 N.E.2d 512 (1950); Waynick v. Chicago's Last Department Store, 269 F.2d 322 (7 Cir. 1959). Defendant distinguishes the Minnesota case of Schmidt v. Driscoll Hotel, Inc., 249 Minn. 376, 82 N.W.2d 365 (1957), where the Minnesota Dram Shop law was applied even though the accident occurred in Wisconsin, on the grounds that in that case the alcohol was consumed in Minnesota and all the parties were from Minnesota.

■ The approach suggested by defendant seems to depend in large part on a counting of the contacts. However, this appears to be an inadequate application of the "significant contacts" rule as it is used today. The Supreme Court of Wisconsin in Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408, 416 (1965), has observed:

"The proposed Draft of the Restatement Second, supra, lists contacts that in *some* cases may be controlling. We conclude that the mere counting of contacts should not be determinative of the law to be applied. It is rather the relevancy of the contact in the terms of policy considerations important to the forum, vis-a-vis, other contact states. We start with the premise that if the forum state is concerned it will not favor the application of a rule of law repugnant to its own policies, and that the law of the forum should

presumptively apply unless it becomes clear that nonforum contacts are of the greater significance."

This conception of the "significant contacts" choice of law theory is perhaps best espoused in its early promulgation in Babcock v. Jackson, 12 N.Y.2d 473, 481-482, 240 N.Y.S.2d 743, 749, 191 N.E. 2d 279, 283 (1963), where the court said:

"Justice, fairness and 'the best practical result' * * * may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation. The merit of such a rule is that 'it gives to the place "having the most interest in the problem" paramount control over the legal issues arising out of a particular factual context' and thereby allows the forum to apply 'the policy of the jurisdiction "most intimately concerned with the outcome of [the] particular litigation." ' "

It is necessary, therefore, to identify the various policies and interests of the "competing states" in order to determine which state has the "most intimate relationship" as to the issue raised. An enlightened application of this rule in a situation similar to the facts here is found in Zucker v. Vogt, 200 F.Supp. 340 (D.Conn.1961). There the injured party was from New York and the accident happened in New York, but the illegal sale occurred in Connecticut. Applying Connecticut law, Judge Blumenfeld observed:

"If there is no escape from the force of the defendant's argument, then not only is the plaintiff impaled, but the public policy of both New York and Connecticut is frustrated because the basic concepts underlying their respective Dram Shop Acts are the same. * * *

* * * * * *

"When this state has an interest in deterring violations of the Dram Shop

Act \* \* \* and when it commits the power of its courts \* \* \* to serve its interest in providing compensation for injuries to persons in consequence of such breaches it is deemed unlikely that the Connecticut court would judicially refuse to serve those interests in this case in order to mechanically conform to the conceptualistic territorial view of torts as set forth in the Conflict of Laws Restatement § 377." *Id.* at 342.

The issue as to the correct applicability of the Connecticut Dram Shop Act in Zucker v. Vogt, supra, was abandoned on appeal. However, in affirming the judgment, the Second Circuit observed in a footnote:

"This is a situation where there is *no real conflict* between Connecticut and New York law. Each state has a dram shop act and to deny effect to the Connecticut statute because Baker had an accident in New York rather than Connecticut would be to sacrifice the public policies of both states to a mechanical territorial model of choice of law principles." Zucker v. Vogt, 329 F.2d 426 at 428 n. 2 (2 Cir. 1964).

The North Dakota Dram Shop Act is both regulatory and remedial in nature. In Iszler v. Jorda, 80 N.W.2d 665, 667–668 (N.D.1957), the court observed:

"The act is remedial in character and should be construed to suppress the mischief and advance the remedy. \* \* \* It clearly gives a cause of action to every person who is injured in person, property or means of support as the result of the intoxication of any person when the intoxication was caused by the use of alcoholic beverages sold or given away in violation of law."

Both the remedial and the regulatory purposes of the North Dakota statute are best carried out by its application to the facts litigated here. The prohibited sale of liquor to a minor is not denied. We conclude that under the "significant con-tacts" rule North Dakota has the most "significant" interest in the present litigation and that North Dakota would apply its own Dram Shop Act under the facts of this case. See Watts v. Pioneer Corn Co., 342 F.2d 617 (7 Cir. 1965); Lowe's North Wilkesboro Hdwre. v. Fidelity Mutual Life Ins. Co., 319 F.2d 469, 473 (4 Cir. 1963); Merchants National Bank & Trust Co. v. United States 272 F.Supp. 409 (D.N.D.1967). See also Reich v. Purcell, 67 Cal.2d 551, 432 P.2d 727 (1967); Fuerste v. Bemis, 156 N.W. 2d 831 (Iowa 1968); Schmidt v. Driscoll Hotel, Inc., 249 Minn. 376, 82 N.W.2d 365 (1957). Cf. Brendle v. General Tire and Rubber Co., 408 F.2d 116, 118 n. 8 (4 Cir. 1969). We further observe that such a result does not contravene the interests or policies of Minnesota, which also has a dram shop act.

(2) Sufficiency of evidence.

The defendant also complains that the plaintiffs did not present sufficient evidence to make a prima facie showing that its agent, at the time of the sale, had knowledge that another minor (the driver Voigt) would be given a portion of the beer to consume. In Fladeland v. Mayer, 102 N.W.2d 121 (N.D. 1960), a minor illegally purchased two pints of vodka from a dram shop dealer. Unknown to the beverage dealer the minor shared his purchase with a third party, who became intoxicated and caused an accident. The North Dakota Supreme Court held there was no liability because there was no evidential basis for the dealer to reasonably know that the alcoholic beverage would be shared with others. *Fladeland,* however, did recognize liability where the dealer knew or reasonably should have known that the purchaser would give a part of the liquor to other minors. In light of the verdict for the plaintiffs, we must view the evidence in the light most favorable to them. Parke-Davis & Co. v. Stromsodt, 411 F.2d 1390 (8 Cir. 1969). There are many facts which would suggest that the clerk reasonably should have known that others, particularly minors, would share

the alcohol: the attire of the purchaser, the tapered jeans, sweater, his newly forming mustache, etc.; the manner of payment; his refusal of aid in loading the kegs and the size and nature of the purchase. Under both North Dakota and federal law we hold there exists substantial evidence for the jury to consider. See Schultz & Lindsay Const. Co. v. Erickson, 352 F.2d 425 (8 Cir. 1965).

(3) Instructions.

■ The trial court instructed the jury as to remote liability, as follows:

"Now, members of the jury, the Plaintiffs in these cases, in order to recover in these actions, must prove by a fair preponderance of the evidence: (1) That Defendant's employee sold the alcoholic beverages consisting of two 16 gallon kegs of beer to a minor, that is, John Flynn; (2) That the Defendant's employee know or reasonably should have known that others would consume a part of such alcoholic beverages or, in the alternative, that Defendant's employee knew or had reasonable grounds to believe that the buyer would share a part of such alcoholic beverages with another minor; * * * The alcoholic beverage seller is liable for damages for sale to a minor if the seller knew or had reasonable grounds to know that the alcoholic beverage sold to such minor would be consumed by others or that he would share a part of it with another minor."

The defendant accepts this instruction as it pertains to "other minors," but it objects to the broad inclusion of language as to knowledge of consumption "by

others," and maintains that to include the latter is prejudicial error. On the other hand, plaintiffs urge that this instruction clearly embodies the third syllabus of the *Fladeland*[3] case. The syllabus in North Dakota sets out the points adjudicated and "the principles settled in and by such decision." N.D.Cent.Code § 27–02–23 (1960). See also Const. § 102, 13 N.D.Cent.Code (1960). An identical instruction has also been approved in recent Minnesota case, Kvanli v. Village of Watson, 272 Minn. 481, 139 N.W.2d 275 (1965), under a similar statute.[4] We find no prejudicial error here.

■ Defendant also complains of the court's instruction regarding "the means of knowledge." The court instructed:

"The means of knowledge are ordinarily equivalent in law to knowledge, so if it appears to you from the evidence in these cases that a person had information which would lead a reasonably prudent person to make inquiry through which he would surely learn certain facts, then such person will be presumed to have had actual knowledge of those facts the same as if he had made such inquiry and had actually learned such facts. That is to say, the law will charge such person with notice and knowledge of whatever he would have learned upon making such inquiry as it would have been reasonable to expect him to make under the circumstances."[5]

In the *Fladeland* case the North Dakota Supreme Court uses interchangeably the language of "reasonably should have known" and "reasonable ground to believe." Under the circumstances, we do

3. The third syllabus of Fladeland v. Mayer, 102 N.W.2d 121 (N.D.1960), provides:
"Liability under the Civil Damage Act, Sec. 5–0121 NDRC 1943, for unlawful sale of alcoholic beverages, rests on the seller for damages caused by the intoxication of the immediate buyer only unless the seller knew or reasonably should have known that others would consume a part of such liquor."

4. Defendant urges that the North Dakota Supreme Court in *Fladeland* refused to

follow Minnesota law construing the Minnesota Dram Shop Act. We do not read the *Fladeland* case as doing anything more than distinguishing its facts from the fact in the Minnesota decision of Benes v. Campion, 186 Minn. 578, 244 N.W. 72 (1932).

5. The instruction is taken from Mathes & Devitt, Federal Jury Practice & Instructions, § 71.07 (1965).

not consider this instruction so misleading as to constitute prejudicial error.

■ Defendant likewise complains of the court's instruction:

"You are instructed that the sale of alcoholic beverages to a minor below 21 years of age is illegal and contrary to law, and it is immaterial if the appearance of the minor indicated that he was of permissible age or whether the sale was made in good faith and in ignorance."

Defendant urges that this confuses the issue of illegality of sale with the issue of its knowledge that the beer would be shared with others. We think the issue of liability as to third persons is covered succinctly by the other instructions previously discussed. This instruction is directed to the sale itself and is a correct statement of the law of North Dakota. We find no prejudice in the instructions given.

(4) Evidentiary questions.

We come then to the final contentions as to error. Complaint is made that the trial court committed prejudicial error in allowing (1) evidence as to other sales by the Bottle Shop to fraternities, (2) testimony as to injuries by a doctor based upon inaccurate hearsay statements of another physician and (3) speculative testimony as to future expenses regarding the "possibility" of future surgery.

■■ The evidence as to sales to fraternities, if not otherwise relevant, was admissible for impeachment purposes. Challenge is now made that plaintiff used this testimony as substantive proof in final argument. However, no objection was made at that time, and under these circumstances, the trial court's discretionary ruling as to the cross-examination of the defendant's agent cannot be attacked on that basis.

■ Complaint is likewise made that Dr. Pilney testified in his deposition that Mr. Walkosz' jaw fracture was a Lefort III fracture. Defendant brought out on cross-examination that Dr. Pilney based this upon information he gained from another physician, Dr. Lamb. Dr. Lamb testified at trial that the proper terminology for Walkosz' fracture was a Lefort I fracture or possibly a Lefort II fracture. Defendant urges that a Lefort III fracture is a much more serious type of injury since it involves a complete displacement of the face from the skull.

A motion to strike Dr. Pilney's statement, taken in a pretrial deposition, was not made until trial. The district court held that the motion to strike should have been made at the time of the deposition itself. Cf. Fed.R.Civ.P. 32(c). See Cordle v. Allied Chemical Corp., 309 F.2d 821 (6 Cir. 1962); Batelli v. Kagan & Gaines Co., 236 F.2d 167 (9 Cir. 1956). Assuming, as defendant urges, this ruling to be error, we are not convinced that the testimony itself was prejudicial. Laymen sitting on a jury are impressed with factual injury and disability rather than the technical medical name for the injury itself. Regardless of whether the injury was a Lefort I, II or III, both doctors agreed that Walkosz received multiple facial fractures that were quite serious and disabling.

■ Error is also claimed as to plaintiff Trapp's damages. Dr. Kelly, Trapp's orthopedic surgeon, was asked on direct examination whether he had an opinion based upon a reasonable medical certainty as to the probability of a surgical arthrodesis of the ankle. Over objection, he was allowed to testify that there was a 10 percent probability that Trapp's ankle would need an arthrodesis within the next five to ten years. Defendant then moved to strike the testimony and this was denied. We perceive no error at this point. A physician may testify as to the probability, even though it be slight, as to the future risk of injury or surgery based upon the present disability involved. Cf. Teegarden v. Dahl, 138 N.W.2d 668 (N.D.1965) and see cases collected in 29 N.A.C.C.A.L.J. 204–206 (1962–63). Such risk is a medical fact and may be relevant if for no other purpose than to establish a basis for compensable anxiety of an injured

party. See e. g. Baylor v. Tyrrell, 177 Neb. 812, 131 N.W.2d 393 (1964). The difficulty in the present case is that the plaintiff then went on to prove the expenses and the resulting total disability that would ensue from such surgery. Since it was not proven as a matter of reasonable certainty or probability that surgery would occur, under North Dakota law admission into evidence of the related expenses and disabilities was error. Defendant's objection should have been sustained. Holecek v. Janke, 171 N.W.2d 94 (N.D.1969). In Holecek v. Janke, supra, the Supreme Court of North Dakota required a remittitur of the proven expenses. The problem with allowing a remittitur is that if the jury weighs the expenses it also undoubtedly considers pain and suffering and the resultant total disability as it might affect loss of earning capacity. Here the error was compounded in that the doctor said that the total disability would be 8 to 12 months. Thus, if there is actual prejudice by this testimony influencing the verdict, it would be possible to isolate just the expenses for remittitur.

Although we think the question of prejudicial error a close issue here, the cross-examination of Dr. Kelly established that future surgery was not to occur. Dr. Kelly testified on cross-examination that in his opinion there was a 99 percent probability that Trapp would not need a future arthrodesis. Under these circumstances, we feel correct in assuming that the jury would not award damages arising out of the possibility of one chance in 100 that future surgery would be required. Cf. Thornburg v. Perleberg, 158 N.W.2d 188 (N.D.1968).

There is no question that trial courts should be alert to correct abuses as to inadmissible evidence and to assure both parties a fair trial. At the same time, appellate judges should be reluctant to reverse jury verdicts, where all of the evidence on any one issue is presented to the jury to consider and weigh under proper instructions. The court instructed that a plaintiff's recovery must be based upon the preponderance of evidence and that only damages which were proven as a matter of reasonable certainty were to be allowed. Here there exists only evidence that the probabilities are 1 in 100 that future surgery might be required. We think it too speculative to say under these circumstances that reasonable minds might be influenced to award improper damages. Error should seldom be predicated on the particular form of words a witness might use, when the complete circumstance as to the foundation for his knowledge and the extent of his knowledge are brought to light. Cf. Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S. 107, 109, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959). This seems particularly true when physicians are called upon to give their medical opinions as to probabilities regarding the extent of injuries and disabilities. The law still operates on the principle that the jury is presumed to be composed of persons of reasonable intelligence and that they will give proper weight to the realities of the evidence proffered. Perhaps Professor Wigmore was correct when he long ago wrote that "the subtle mental twistings produced by the Opinion rule have reduced this part of the law to a congeries of nonsense. * * *" Wigmore, Evidence § 1976 (3d ed. 1940). In balance we do not feel the error was so prejudicial to require a new trial on damages.

Judgments affirmed.