**John A. BANKORD and Mayleen L. Bankord, Plaintiffs,**

v.

**Richard DeROCK, Individually and d/b/a Leon's Tap, Defendant.**

Civ. No. C76–3002.

United States District Court, N. D. Iowa, C. D.

June 23, 1976.

Timothy J. Walker, James Q. Blomgren, Des Moines, Iowa, for plaintiffs.

Gerry M. Rinden, Rock Island, Ill., Warren L. DeVries, Mason City, Iowa, for defendant.

HANSON, Chief Judge.

This case involves a novel question of the extraterritorial application of Iowa's Dram Shop Act.[1] The matter is presented to the Court by way of the defendant's motion to dismiss pursuant to Rule 12(b), Federal Rules of Civil Procedure.

■ Factually, this case developed as follows: The plaintiffs, John and Mayleen Bankord, husband and wife, are residents and citizens of Minnesota. On January 16, 1974, John Bankord was injured near Glenville, Minnesota in an automobile accident with Clyde Francis Hatch. According to the plaintiffs' complaint, which the Court must accept as true for purposes of considering defendant's motion to dismiss,[2] Hatch was intoxicated at the time of the accident and the intoxication was a proximate cause of the accident. The complaint further alleges Hatch was sold or given intoxicating liquor by the defendant which was a proximate cause of his intoxication at the time of the accident. The defendant, Richard DeRock, is a resident and citizen of Iowa and holds a liquor license for the premises known as Leon's Tap in Mason City, Iowa.

■ Jurisdiction is based upon diversity of citizenship, the amount in controversy exceeding $10,000 exclusive of interest and costs. 28 U.S.C. § 1332 (1970). The Court in this case must apply Iowa law, including its conflict of laws. *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 108, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Klaxton Co. v. Stentor*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

The precise issue before the Court is whether the Iowa Dram Shop Act's civil liability provisions apply to a situation where the alleged intoxication occurred in Iowa but the injury giving rise to the cause of action occurred in another state. Since the plaintiffs have predicated their cause of action solely on the Act, the resolution of the extraterritorial effect issue is concomitantly determinative of the ruling on defendant's motion to dismiss.

As previously indicated, the Iowa Supreme Court has had no occasion to determine the extraterritorial effect of the Act.[3] However, the Court, sitting in its capacity as another court of Iowa, finds some guidance from state and federal decisions in other jurisdictions.

■ A survey of the relevant decisional law reveals a split of authority on the extraterritorial effect of state dram shop acts. The determinative factor in analyzing the

1. Iowa Code § 123.92 (1975) provides in pertinent part that:

> Every husband, wife, child, parent, guardian, employer or other person who shall be injured in person or property or means of support by any intoxicated person or resulting from the intoxication of any such person, shall have a right of action, severally or jointly against any licensee or permittee who shall sell or give any beer or intoxicating liquor to any such person while he is intoxicated, or serve any such person to a point where such person is intoxicated for all damages actually sustained.

Section 123.92 replaced the prior dram shop act, Iowa Code Ann. § 129.2 (1949), which was repealed by ch. 131, § 152 [1971] Iowa Acts. Section 129.2 read as follows:

> Every wife, child, parent, guardian, employer or other person who shall be injured in person or property or means of support by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name against any person who shall, by selling or giving to another contrary to the provisions of this title any intoxicating liquors, cause the intoxication of such person, for all damages actually sustained, as well as exemplary damages.

2. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Beenken v. Chicago & Northwestern R.R.*, 367 F.Supp. 1337 (N.D.Iowa 1973); 2A *Moore's Federal Practice* ¶ 12.08, pp. 2266–67 (1975).

3. The issue did arise in the case of *Brooks v. Engel*, 207 N.W.2d 110 (Iowa 1973). That case involved a drowning accident on the eastern side of the Mississippi River, and the Iowa trial court dismissed all portions of the plaintiff's petition relating to Section 129.2, *see* footnote 1, *supra*, for the reason that section had no extraterritorial effect. On appeal, the plaintiff argued, and the defendant conceded that both Iowa and Illinois had concurrent jurisdiction of the river area pursuant to Iowa Code § 1.3 (1966). Therefore, the supreme court expressed no opinion on the trial court's ruling.

effect accorded such acts is the nature of the dram shop acts, i. e., whether penal or remedial, in juxtaposition to the appropriate choice of law principles.

Illinois courts have consistently refused extraterritorial application of the Illinois dram shop act; the rationale based upon the courts' characterization of the act as penal in nature. *See Waynick v. Chicago's Last Department Store,* 269 F.2d 322 (7th Cir. 1959), *cert. denied,* 362 U.S. 903, 80 S.Ct. 611, 4 L.Ed.2d 554 (1960); *Butler v. Wittland,* 18 Ill.App.2d 578, 153 N.E.2d 106 (1958); *Eldredge v. Don Beachcomber, Inc.,* 342 Ill.App. 151, 95 N.E.2d 512 (1950). Similarly, New York courts have refused to accord extraterritorial effect to the New York act. *Goodwin v. Young,* 34 Hun 252 (N.Y.1884).

Other jurisdictions, however, have permitted actions based on local dram shop acts where the injury was sustained in another jurisdiction. These courts have generally characterized the state act as regulatory and remedial in nature, and have permitted extraterritorial application irrespective of otherwise pertinent choice of law principles. *See Trapp v. 4–10 Investment Corporation,* 424 F.2d 1261 (8th Cir. 1970) (North Dakota law: *Zucker v. Vogt,* 200 F.Supp. 340 (D.Conn.1961) (Connecticut law), *aff'd* 329 F.2d 426 (2nd Cir. 1964); *Schmidt v. Driscoll Hotel,* 249 Minn. 376, 82 N.W.2d 365 (1957).

In *Schmidt,* Minnesota plaintiffs were injured in Wisconsin by an auto driver, Sorrenson, after he became intoxicated in defendant's Minnesota tavern. The Minnesota Supreme Court, on appeal from the lower court's dismissal, initially noted the established choice of law rule, *lex loci delicti,*[4] seemingly would require application of Wisconsin law and thereby preclude the plaintiff's cause of action. The court further stated that the case involved two distinct wrongs—the defendant's liquor sales in Minnesota and Sorrenson's negligence causing the vehicular accident in Wisconsin—and that neither wrong would be actionable under the defendant's limited view of Wisconsin and Minnesota law. However, the court reiterated the remedial policies of the Minnesota Civil Damage Act, Minn. Stat.Ann. § 340.95, and held that:

> We feel that the principles in Restatement, Conflict of Laws, §§ 377 and 378, should not be held applicable to fact situations such as the present to bring about the result described and that a determination to the opposite effect would be more in conformity with principles of equity and justice. Here all parties involved were residents of Minnesota. Defendant was licensed under its laws and required to operate its establishment in compliance therewith. Its violation of the Minnesota statutes occurred here, and its wrongful conduct was complete within Minnesota when, as a result thereof, Sorrenson became intoxicated before leaving its establishment. The consequential harm to plaintiff, a Minnesota citizen, accordingly should be compensated for under M.S.A. § 340.95 which furnishes him a remedy against defendant for its wrongful acts. By this construction, no greater burden is placed upon defendant than was intended by § 340.95.

*Schmidt v. Driscoll Hotel, supra,* 82 N.W.2d at 368.

Similarly, in *Zucker v. Vogt, supra,* the court considered a situation under the Connecticut Dram Shop Act involving New York plaintiffs, a Connecticut tavern owner and a fatal auto accident in New York.

> The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place.
>
> \*   \*   \*   \*   \*   \*
>
> The law of the place of wrong determines whether a person has sustained a legal injury.

---

4. Under this general rule, which most jurisdictions adhered to in actions brought in one jurisdiction for torts committed in another, the substantive rights of the parties are governed by the place of the wrong. *See Fuerste v. Bemis,* 156 N.W.2d 831 (Iowa 1968); *see also* 16 Am. Jur.2d, *Conflicts of Laws,* § 71, pp. 109–13 (1964).

Classic statements of the rule are found in Restatement, Conflicts, §§ 377, 378, as follows:

The defendant vigorously contended the court must look to New York law when applying Connecticut conflicts of law, and further that New York will not give extraterritorial effect to a breach of Connecticut's Dram Shop Act. The district court, however, noted that the Connecticut act had consistently been interpreted as providing a remedy, and held:

> When this state has an interest in deterring violations of the Dram Shop Act . . . and when it commits the power of its courts . . . to serve its interest in providing compensation for injuries to persons in consequence of such breaches it is deemed unlikely that the Connecticut courts would judicially refuse to serve those interests in this case in order to mechanically conform to the conceptualistic territorial view of torts as set forth in the Conflicts of Laws Restatement § 377.

> \* \* \* \* \* \*

Here it is difficult to see how the harmony between different states which is the fundamental basis for the whole doctrine of conflict of laws could be adversely affected by holding, as I believe the highest courts of Connecticut would, that the plaintiff may recover damages for injuries sustained as a result of violation by the defendant of the provisions of the Connecticut Dram Shop Act.

200 F.Supp. at 342–43.

Many states, including, Iowa, have in recent years abandoned the narrow *lex loci* approach espoused in Restatement, Conflicts § 377, and have adopted a significant contacts or relationships approach, as set forth in Restatement (Second) of Conflicts, §§ 145, 146 (1971), to choice of law situations. *See, e. g., Trapp v. 4–10 Investment Corporation, supra; Fuerste v. Bemis,* 156 N.W.2d 831 (Iowa 1968). The interrelationship between the most significant contacts

rule and extraterritorial application of a state dram shop act was explored in *Trapp v. 4–10 Investment Corporation, supra.* That case involved liquor sales in North Dakota to minor residents of Minnesota causally resulting in an auto accident in Minnesota. The Minnesota plaintiffs sought relief under the North Dakota Dram Shop Act, which is virtually identical to Iowa's. Initially, the Eighth Circuit upheld the district court's adoption of the most significant contacts approach, and proceeded to hold:

> The North Dakota Dram Shop Act is both regulatory and remedial in nature.

> . . .

> \* \* \* \* \* \*

> Both the remedial and the regulatory purposes of the North Dakota state are best carried out by its application to the facts litigated here. The prohibited sale of liquor to a minor is not denied. We conclude that under the "significant contacts" rule, North Dakota has the most "significant" interest in the present litigation and that North Dakota would apply its own Dram Shop Act under the facts of this case. [citations omitted]. We further observe that such a result does not contravene the interests of policies of Minnesota, which also has a dram shop act.

424 F.2d at 1265.

The distinction between these cases, and their choice of law analysis is slight. In *Schmidt* and *Zucker,* the courts found that the underlying policies of the dram shop acts afforded a sound basis for extraterritorial application *irrespective* of the choice of law principle, *lex loci delicti.* In *Trapp,* however, the court applied the controlling choice of law analysis and found that the strong policy considerations and interests of the act preponderated over other pertinent contacts or relationships.[5]

---

5. Broadly stated, certain factors or "contacts" are considered in determining the law of the state which has the most significant relationship to the occurrence.

These "contacts" are set forth in Restatement (Second) of Conflicts § 145(2) (1971) as follows:

> 2. Contacts to be taken into account in applying principles of § 6 to determine the law applicable to an issue include:

The Iowa Dram Shop Act, like the North Dakota statute in *Trapp*, has generally been construed as regulatory and remedial in nature. *Wendelin v. Russell*, 259 Iowa 1152, 147 N.W.2d 188 (1966). The court in *Wendelin, supra*, explained that the primary purpose of the Act is "to place a hand of restraint upon those licensed or permitted by law to sell or supply intoxicants to others and protect the public, but above all to provide an avenue of relief to those who had no recourse or right of action under the common law." *Id.* 147 N.W.2d at 192. Section 123.92 is a part of Chapter 123, Iowa Code, which represents a comprehensive legislative effort to regulate traffic in alcoholic liquors in the public interest. *See* Iowa Code § 123.1 (1975).

It is the defendant's contention that since the Act exists in derogation of the common law, it should be strictly construed to permit only statewide application. Furthermore, the defendant supplements his claim by portending a dramatic wave of litigation involving out-of-state accidents and, concomitantly, an enhanced burden on Iowa tavern owners not contemplated by the legislature.

Contrary to defendant's initial contention, the language of the Act, *see* Iowa Code § 123.1 (1975), and the decisional law thereunder, have uniformly required a liberal construction "to aid in suppressing the mischief and advance the remedial objective which prompted its enactment." *Wendelin v. Russell, supra*, 147 N.W.2d at 192; *Federated Mutual Imp. & H. Ins. Co. v. Dunkelberger*, 172 N.W.2d 137 (Iowa 1969). The Court believes the Act's policy considerations sanction extraterritorial application. Furthermore, the novelty of this issue in Iowa and other jurisdictions belies the defendant's vision of dire and ominous results from permitting extraterritorial application. Finally, the Court believes it anomalous that an action could be main-

tained where the intoxication occurred in Davenport, Iowa and the wrong occurred in Council Bluffs, Iowa—some three hundred (300) miles distant; but not where the wrong occurred in Rock Island, Illinois—some two (2) miles from Davenport.

In summation, the court believes the Iowa Supreme Court, if initially presented with this issue, would adopt the rule permitting extraterritorial application of the Iowa Dram Shop Act. The rule is well reasoned and intrinsically fair, and, most importantly, reflects the legislative intent of the Act.

Accordingly, IT IS HEREBY ORDERED that the defendant's motion to dismiss is, in its entirety, overruled.

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.