817 F.2d 104
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The BMW STORE, INC., Plaintiff-Appellant,
v.
PEUGEOT MOTORS OF AMERICA, INC., Eastern Auto Distributors,
Inc., and Riverside Ford, Inc., Defendants-Appellees.
 No. 86-5360.
 United States Court of Appeals, Sixth Circuit.
 May 4, 1987.
 
 Before RYAN and BOGGS, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, The BMW Store, Inc. (BMW), in Cincinnati, Ohio, appeals the district court's refusal to issue a preliminary injunction enjoining the establishment of a new Peugeot dealership at Riverside Ford in Newport, Kentucky.
 
 
 2
 Because the district court did not abuse its discretion in declining to issue the injunction, we affirm.
 
 I.
 
 3
 Peugeot Motors of America, Inc., enfranchised The BMW Store in Cincinnati, Ohio. The franchise agreement was a non-exclusive contractual arrangement allowing BMW to sell Peugeot automobiles. Eastern Auto Distributors, Inc., a distributor of Peugeot cars independent of Peugeot Motors of America, seeks to enfranchise Riverside Ford, Inc., in Newport, Kentucky, directly across the Ohio River from Cincinnati. Although defendants dispute the distance between the two dealerships, they are within ten miles of one another.
 
 
 4
 BMW invested more than $500,000 to construct a sales and service facility for the Peugeot dealership in Cincinnati, and to train personnel. Prior to BMW's enfranchisement, Peugeot had sold only two automobiles in the Cincinnati area. Between the date of BMW's enfranchisement and the date of the hearing below, BMW sold about sixty new Peugeots, some to Kentucky buyers. Riverside Ford has spent less than $50,000 in anticipation of obtaining a Peugeot franchise.
 
 
 5
 Upon discovering that Eastern Auto Distributors intended to enfranchise Riverside Ford as a Peugeot dealer in Newport, Kentucky, and learning that Eastern and Riverside did not intend to comply with the notice and hearing procedures set forth either in Ohio Rev. Code Ann. Sec. 4517.50-4517.65 or Ky. Rev. Stat. Sec. 190.047, BMW filed suit to enjoin enfranchisement of Riverside until such time as Eastern and Riverside comply with the notice and hearing provisions of the statutes.
 
 
 6
 The cited Kentucky and Ohio statutes have the same general purpose: to regulate the establishment of automobile dealerships that are located within ten miles of one another and which market the same product line, "in order to prevent fraud, impositions, and other abuses upon [the] citizens, and to protect and preserve the investments and properties of the citizens of the [respective] state[s]." The statutes have protest, notice and hearing provisions designed to carry out the purposes of the legislation.
 
 
 7
 Although BMW has alleged that the defendants have violated both the Kentucky and Ohio statutes, it appears to rely only upon the Kentucky statute as authority for its claimed entitlement to relief.
 
 
 8
 In determining whether the district court erred in refusing to issue the requested preliminary injunction, we merely decide whether the court abused its discretion; and in making that determination, we do not undertake a "comprehensive discussion or review of the merits of the cause beyond the bare essentials necessary to determine if the trial court exceeded reasonable discretion in rendering preliminary relief as the lower court's hearing was in no sense the final disposition." Tate v. Frey, 735 F.2d 986, 990 (6th Cir. 1984). See also USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94 (6th Cir. 1982); In re Mason County Medical Association v. Knebel, 563 F.2d 256 (6th Cir. 1977). The trial court's factual findings are subject to the clearly erroneous review. See Frisch's Restaurant, Inc. v. Shoney's, Inc., 759 F.2d 1261, 1264 (6th Cir. 1985). See also SEC v. Carter Hawley Hale Stores, Inc., 760 F.2d 945 (9th Cir. 1985).
 
 
 9
 The familiar criteria for determining whether a preliminary injunction shall issue are: 1) whether movant has shown a strong or substantial likelihood or probability of success on the merits; 2) whether movant showed irreparable injury and an inadequate remedy at law; 3) whether the preliminary injunction would harm third parties; and 4) whether the public interest would be served by issuing the injunction. Frisch's, 759 F.2d at 1263.
 
 
 10
 In its opinion from the bench, the district court denied the requested preliminary injunction because it found the plaintiff failed to demonstrate a strong likelihood or probability of success on the merits, and failed to demonstrate that an irreparable injury would result absent issuance of the injunction.
 
 
 11
 Although we think the district court was correct in refusing the preliminary injunction on both grounds, we need only address the first of the two: the plaintiff's likelihood of success on the merits.
 
 II.
 Kentucky Rev. Stat. Sec. 190.047 provides:
 
 12
 (6) "In the event that a ... distributor ... seeks to enter into a franchise establishing an additional new motor vehicle dealership ... within or into a relevant market area where the same line make is then represented, the . . . distributor ... shall, in writing, first notify the licensor [Motor Vehicle Commission], and each new motor vehicle dealer in such line make in the relevant market area, of the intention to establish an additional dealership ... within or into that market area. The relevant market area shall be a radius of ten (10) miles around an existing dealership .... [A]ny such new motor vehicle dealership may file with the licensor a protest to the establishment or relocation of the new motor vehicle dealership. When such a protest is filed, the licensor shall inform the ... distributor ... and that ... distributor . . . shall not establish or relocate the proposed new motor vehicle dealership until the licensor has held a hearing, if the licensor has determined that there is good cause for not permitting such new motor vehicle dealership...." [Emphasis added]
 
 
 13
 In order to show a strong likelihood that it is likely to prevail on the merits, BMW was obligated to demonstrate to the district court that the Kentucky statute is likely to be interpreted and applied by the Kentucky Motor Vehicle Commission and the Kentucky courts in such a way as to forbid establishment of the Riverside dealership in Newport, Kentucky.
 
 
 14
 Defendants respond that since BMW is an Ohio business, and Riverside is a Kentucky business, enforcement of Sec. 190.047 of the Kentucky statute to protect BMW would be an extraterritorial application of Kentucky law; and no state law may be applied extraterritorially. Hilton v. Guyot, 159 U.S. 113 (1895); Dred Scott v. Sandford, 60 U.S. 393 (1857).
 
 
 15
 We disagree.
 
 
 16
 First, even if this were an application of the law beyond the state's borders, Kentucky can define the duties of its citizens without that definition being considered extraterritorial. Parets v. Eaton Corp., 479 F. Supp. 512, 515 (E.D. Mich. 1979) (citing Skiriotes v. Florida, 313 U.S. 69 (1941)); Bankord v. DeRock, 423 F. Supp. 602 (N.D. Iowa 1976); Sexton v. Ryder Truck Rental, Inc., 413 Mich. 406 (Mich. 1982). Riverside Ford, a Kentucky business, is subject to the laws of Kentucky. Second, where the defendants' conduct occurs in-state, application of the law to that conduct is not extraterritorial. See Heilman v. Wolke, 427 F. Supp. 730 (E.D. Wis. 1977); Sexton, 413 Mich. at 435-39. Here, defendants' conduct is the establishment of a franchise in Kentucky. Although application of S 190.047 as plaintiff desires may benefit an out-of-state party because the ten-mile limit fixed by the statute would utilize an Ohio focal point, thereby having consequences in Cincinnati, the conduct affected by the statute would occur only in Kentucky.
 
 
 17
 Nevertheless, the likelihood that BMW would succeed on the merits turns, in large part, on the question whether the Kentucky statute is likely to be applied by Kentucky authorities to protect the business interest of BMW's Ohio dealership. The question addresses what the "relevant market area" is within the meaning of Sec. 190.047.
 
 
 18
 David Garnett, the Executive Director of the Motor Vehicle Commission of the Commonwealth of Kentucky, which Motor Vehicle Commission is "the licensor" under the statute, stated in an affidavit that the Kentucky statute, which would require the defendant to file a notice of the enfranchisement and result in hearings before the Motor Vehicle Commission, would not apply where the protesting party is located out-of-state. He stated he would urge BMW's protest be rejected as being outside the relevant market area.
 
 
 19
 The declared policy of this chapter of the Kentucky Motor Vehicle Code is that since the sale of vehicles "within this state vitally affects the general economy of the state," the regulation of dealerships and distributors doing business "in this state" is meant, in part, "to protect and preserve the investments and properties of the citizens of this state."[1] Ky. Rev. Stat. Sec. 190.015. Thus, the public policy underlying the statute is declared to be the protection of the property and investments of the citizens of the State of Kentucky. The relevant market area therefore would seem to be restricted to the State of Kentucky. In this case, application of Ky. Rev. Stat. Sec. 190.047 at the behest of BMW would protect the property and investments of BMW, an Ohio dealership, to the detriment of the investment and property of Riverside Ford, a Kentucky business.
 
 
 20
 We think, as the district court did, that the statute is not likely to be construed to benefit an out-of-state dealership to the detriment of the interests of a Kentucky dealership, particularly in view of the language of S 190.015. That chapter of the Motor Vehicle Code is concerned not with protecting BMW in Ohio but with protecting Riverside Ford and other Kentucky dealerships from destructive competition injurious to the State's economy and businesses.
 
 
 21
 In determining that BMW was unlikely to succeed on the merits of its claim, the district court observed that if a hearing were held before the Kentucky Motor Vehicle Commission on the Riverside enfranchisement, the Commission would be bound by Ky. Rev. State. Sec. 190.047(7) which provides:
 
 
 22
 (7) In determining whether good cause has been established for not entering into or relocating an additional franchise ... the licensor shall take into consideration the existing circumstances, including, but not limited to:
 
 
 23
 (a) Permanency of the investment;
 
 
 24
 (b) Effect on the retail new motor vehicle business and the consuming public in the relevant market area;
 
 
 25
 (c) Whether it is injurious to the public welfare ...;
 
 
 26
 (d) Whether the new motor vehicle dealer of the same line make in that relevant market area is providing adequate competition and convenient consumer care ... ;
 
 
 27
 (e) Growth, or decline in population ... in the relevant market areas;
 
 
 28
 (f) Whether the establishment ... would increase the competition, and therefore, be in the public interest;
 
 
 29
 (g) The effect on the relocating dealer of a denial of its relocation ....
 
 
 30
 The district court found that the establishment of the new dealership in Newport would not substantially injure the plaintiff because the number of Peugeot sales would increase with the addition of another dealer in Kentucky, and therefore the "pie" would become larger. It also found that whether a new dealership was established or not, there would be no substantial impact on the consuming public in the market area because of the small numbers of Peugeots sold. The district court added that the plaintiff had not shown the likelihood of success on the merits because it had not presented a sufficient analysis of all the marketing factors to demonstrate the licensor would find in their favor.
 
 
 31
 Plaintiff replies that the administrative agency, not the district court, should be the first to consider the merits. While that is true as a a general proposition, the fact remains that the plaintiff sought a preliminary injunction from the district court. The court was required, therefore, to make a finding as to the likelihood of success on the merits based upon the persuasiveness of plaintiff's preliminary submission demonstrating a basis to conclude that plaintiff was likely to succeed on the merits before the Kentucky Motor Vehicle Commission. The "merits" are the substantive claims, not mere application of the procedural relief.
 
 
 32
 We think the district court did not abuse its discretion in determining that the plaintiff is unlikely to prevail on the merits, and in refusing the requested preliminary injunction.
 
 
 33
 AFFIRM.
 
 
 
 [1]
 Ky.Rev.Stat. Sec.l90.015 provides:
 "The legislature finds and declares that the distribution and sale of vehicles within this state vitally affects the general economy of the state . . . and the public welfare ... it is necessary to regulate and license vehicle ... distributors ... and to regulate and license dealers of vehicles doing business in this state, in order to prevent frauds, impositions, and other abuses upon its citizens, and to protect and preserve the investments and properties of the citizens of this state." (emphasis added).