IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 13, 2001 Session

## DONALD MILLER, ET AL. v. CHOO CHOO PARTNERS, L. P.

**Appeal from the Circuit Court for Hamilton County**
**No. 99CV0720      Samuel H. Payne, Judge**

**FILED NOVEMBER 5, 2001**

**No. E2001-00007-COA-R3-CV**

D. MICHAEL SWINEY, J., dissenting

I find it necessary to dissent, respectfully, from the majority opinion. I believe the Trial Court erred in failing to direct a verdict in Defendant's favor based upon Plaintiffs' failure to present medical evidence that Mr. Miller's back and neck injuries were more likely than not caused by his fall. I believe the medical testimony presented by Plaintiffs fails to satisfy this burden, even taking the strongest legitimate view of the evidence in favor of Plaintiffs as we must.

As discussed in the majority opinion, Plaintiffs presented medical evidence by the testimony of Mr. Miller's two treating physicians. It is this testimony that is the crux of my dissent.

I have no disagreement with the law as discussed in the majority opinion. I agree with the majority as to what the law is, but disagree as to whether or not Plaintiffs met their burden as required by law. As discussed by the majority, the causation of a medical condition must be established by testimony from a medical expert. *Thomas v. Aetna Life & Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991). I rely upon the same Tennessee Supreme Court case, and in fact the same language, as the majority, as follows:

"The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant …

The plaintiff is not, however, required to prove the case beyond a reasonable doubt. The plaintiff need not negative entirely the possibility that the defendant's conduct

was not a cause and it is enough to introduce evidence from which reasonable persons may conclude that it is more probable that the event was caused by the defendant than that it was not ..." Prosser [and Keeton, *Torts*, § 41, p. 269 (5ᵗʰ ed. 1984)].

"A doctor's testimony that a certain thing is *possible* is no evidence at all. His opinion as to what is possible is no more valid than the jury's own speculation as to what is or is not possible. Almost anything is possible, and it is thus improper to allow a jury to consider and base a verdict upon a 'possible' cause of death." *Palace Bar, Inc. v. Fearnot*, 269 Ind. 405, 381 N.E.2d 858, 864 (1978). "The mere possibility of a causal relationship, without more, is insufficient to qualify as an admissible expert opinion." *Kirschner v. Broadhead*, 671 F.2d 1034, 1039 (7ᵗʰ Cir. 1982).

The admissibility of an expert medical opinion, of course, should not turn on whether the testifying physician characterizes a particular potential cause of an injury as "conceivable," "possible" or "probable." See *Trapp v. 4-10 Investment Corp.*, 424 F.2d 1261, 1268 (8ᵗʰ Cir. 1970). Regardless of the term employed, if the physician's

> "testimony is such in nature and basis of hypothesis as to judicially impress that the opinion expressed represents his professional judgment as to the most likely one among the possible causes of the physical condition involved, the court is entitled to admit the opinion and leave its weight to the jury." *Norland v. Washington General Hospital*, 461 F.2d 694, 697 (Cir. 8, 1972).

Nevertheless, a mere possibility is not an affirmative basis for a finding of fact. "In the language of the law of evidence, [a medical opinion suggesting] that which is merely possible, standing alone and not offered as auxiliary or rebuttal testimony is immaterial to the ascertainment of the fact and so is inadmissible as evidence of that fact." *Martin v. United States*, 284 F.2d 217, 219 (D.C. Cir., 1960). *Kirschner v. Broadhead, supra*, 671 F.2d at p. 1039-1040.

*Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861-62 (Tenn. 1985) (emphasis in original).

The central point of this quote is that plaintiffs must present evidence affording a reasonable basis for the conclusion that it is more likely than not that the defendant's conduct was a cause in fact of the result. In short, Plaintiffs here were required to present medical evidence affording a reasonable basis for the conclusion that it is more likely than not that Defendant's negligence resulting in Mr. Miller's fall was a cause in fact of his back and neck problems. Plaintiffs failed to do so.

The majority believes the testimony of Dr. Schock and Dr. Lister establishes causation as to Mr. Miller's injuries. I disagree. I believe Dr. Schock's and Dr. Lister's testimony

fail to afford "a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." *Lindsey* 689 S.W.2d at 861.

First, a review of Dr. Schock's testimony is necessary. The majority sets out much of Dr. Schock's relevant testimony on this issue. I will not repeat all of that testimony in this dissent, but rather will refer to the specific portions that form the basis for my dissent. Specifically, Dr. Schock testified as follows:

. . .

A        So I cannot say with any, you know, certainty that, yes, the herniated disc was exacerbated by the fall. But I can say that the fall could have exacerbated the herniation.

Q        And that's about - you're talking about the neck herniation?

A        Both of them.

Dr. Schock clearly testified that he cannot say with *any certainty* that either Mr. Miller's neck or back injury was exacerbated by the fall, only that "the fall *could* have exacerbated the herniation". This testimony does not rise to the level of showing these injuries more likely than not were caused by Mr. Miller's fall.

Dr. Schock's testimony continued, also as discussed by the majority. He was questioned regarding Mr. Miller's neck problem:

Q        Given Mr. Miller's history and given your physical evaluations in 1996 and then in early 1997, can you state, Dr. Schock, within a reasonable degree of medical certainty whether the fall he described to you in April of 1996 at the Chattanooga Choo-Choo, formerly a Holiday Inn, did or did not aggravate or exacerbate this gentleman's preexisting neck problem?

A        I - I definitely cannot put a - say that the fall caused it. He definitely has a predisposing condition that would make him susceptible to that type of an injury from a fall.

Once again, Dr. Schock says he cannot say the fall caused Mr. Miller's neck injury.

Dr. Schock also testifies, again as discussed in the majority opinion, only that it is his opinion to a reasonable degree of medical certainty that Mr. Miller's symptoms "could be" consistent

-3-

with his fall. Again, he does not testify that it is more probable than not, or likely, or to a reasonable degree of medical certainty, but instead testifies only to a "could be" standard.

Next is Dr. Lister's testimony, also as quoted in the majority opinion as follows:

Q    In your opinion, Dr. Lister, is it more likely than not that the recurrent disc disease in the lumbar spine was caused as a result of the fall he described to you?

A    I don't know what caused his recurrent disc herniation. *Based on his history, the two are related*, but I don't know what caused the disc herniation.

The majority, in discussing this testimony of Dr. Lister, admits that Dr. Lister testified that he did not know "what caused the disc herniation." The majority explains away this testimony by saying it "can be legitimately construed as a statement by the doctor that he did not know what caused this condition *originally*. This is the "strongest legitimate view" of this evidence in favor of the plaintiffs . . . ." I would not necessarily disagree with that interpretation, except that the majority overlooks the fact that in the very first sentence of that exact same answer Dr. Lister testified not that he didn't know "what caused the disc herniation" but specifically that "I don't know what caused the *recurrent* disc herniation." [emphasis added]. I believe there is no way to argue that the strongest legitimate view in Plaintiffs' favor of the first sentence of Dr. Lister's answer can be anything other than pertaining to Mr. Miller's conditions after the fall as Dr. Lister specifically referenced Mr. Miller's *recurrent* disc herniation. This being so, what Dr. Lister testified to was that he did not know what caused Mr. Miller's recurrent disc herniation, only that he believed they were related to the fall.

Contrary to the majority's statement, I do not exclude from consideration Dr. Lister's testimony that "I don't know what caused the disc herniation." I agree with the majority that this can be construed as Dr. Lister's admission that he did not know what caused the disc herniation to first manifest itself. The problem with the majority's opinion on this issue is that Dr. Lister said more. He specifically testified "I don't know what caused the recurrent disc herniation." The statement by Dr. Lister relied on by the majority in no way qualifies his statement that he does not know what caused Plaintiff's recurrent disc herniation. Dr. Lister made two statements. In the first, he said he did not know what caused Plaintiff's recurrent disc herniation. In the second, according to the majority's interpretation with which I do not disagree, Dr. Lister arguably stated he did not know what caused the original disc herniation. Therefore, Dr. Lister testified he does not know what caused the disc herniation originally and he does not know what caused the recurrent disc herniation. This was his testimony. Again, we are left with medical testimony not that Mr. Miller's injuries were more likely than not or probably caused by his fall, but only that Dr. Lister does not know what caused Mr. Miller's recurrent disc herniation but believes that the injury and fall are related in some way.

I agree with the majority that we must "take the strongest legitimate view of the evidence favoring the opponent of the motion." *Long*, 797 S.W.2d at 892. I likewise agree that all reasonable inferences in favor of Plaintiffs as the opponents of the motion must be allowed and all evidence contrary to Plaintiffs' position must be disregarded. *Eaton*, 891 S.W.2d at 590; *Long*, 797 S.W.2d at 892. I, however, would hold that even taking the strongest legitimate view of the medical evidence presented by Plaintiffs and applying all reasonable inferences in favor of Plaintiffs, Plaintiffs' medical testimony simply never "affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." *Lindsey*, 689 S.W.2d at 861. Plaintiffs' lawyers attempted to get this level of opinion testimony from Dr. Schock and Dr. Lister, but were unsuccessful in getting medical testimony that Mr. Miller's neck and back injuries more likely than not were caused by his fall. Plaintiff's attorneys used the appropriate language in their questions to these two doctors, language such as "within a reasonable degree of medical certainty" and "more likely than not." The short-coming was not in the lawyer's questions, but rather in the witnesses' answers. I believe the strongest legitimate view of Plaintiffs' medical evidence can be no more than Mr. Miller's fall *could* have been the cause of his neck and back injuries, and that his injuries were consistent with such a fall. This falls far short of being a reasonable basis for the conclusion that Mr. Miller's injuries were more likely than not caused by his fall.

The majority says that a medical expert is not required "to testify with legal precision." While I am unsure exactly what the term "legal precision" means, a medical expert is required, under the law of this state, to testify to a reasonable degree of medical certainty which, I believe, means more likely than not. Plaintiffs' experts did not do that. Therefore, there being no evidence that Mr. Miller's injuries were more likely than not caused by his fall, it became "the duty of the court to direct a verdict for the defendant . . . ." *Lindsey*, 689 S.W.2d at 861.

For these reasons, I believe it was error for the Trial Court to fail to direct a verdict in favor of Defendant. I would reverse the judgment of the Trial Court, and award judgment in favor of Defendant.

_____
D. MICHAEL SWINEY, JUDGE

-5-